DECISION AND JOURNAL ENTRY
Appellant, Ronald W. Adams, appeals from his conviction in the Lorain County Court of Common Pleas. We affirm.
On July 18, 1998, Mr. Adams was placed on post-release control under the supervision of the Adult Parole Authority. On February 12, 1999, Mr. Adams, knowing he was under detention for a third, fourth, or fifth degree felony, purposely broke detention or failed to return to detention. On May 19, 1999, the Lorain County Grand Jury indicted Mr. Adams on one count of escape, in violation of R.C. 2921.34(A)(1). Mr. Adams initially pleaded not guilty to the charge in the indictment, but later, withdrew his plea of not guilty and entered a plea of no contest. In a verdict journalized on June 29, 1999, the trial court accepted Mr. Adams' plea of no contest and found Mr. Adams guilty. Mr. Adams was sentenced to two years of community control sanctions. This appeal followed.
Mr. Adams asserts a single assignment of error:
 THE JUDGMENT OF CONVICTION OF ESCAPE IS UNCONSTITUTIONAL AS APPLIED TO APPELLANT AND IS NOT WHAT THE LEGISLATURE INTENDED IN THE APPLICATION OF THIS STATUTE.
 Mr. Adams argues that the prosecutor should not have indicted him for escape because this matter could have been easily addressed by imposing more restrictive terms of supervision under post-release control. He further asserts that "[t]o charge him with a new felony is certainly far beyond the scope of addressing the problem" and is not what the Ohio Legislature intended by enacting the escape statute. Therefore, Mr. Adams challenges the constitutionality of R.C. 2921.34(A)(1) as violative of Section 9, Article I and Section 1, Article I of the Ohio Constitution. This argument is unpersuasive.
The Ohio Supreme Court has stated that legislative enactments are to be afforded a strong presumption of constitutionality.State v. McDonald (1987), 31 Ohio St.3d 47, 48. The party challenging the statute bears the burden of proving the statute is unconstitutional. State v. Thompkins (1996), 75 Ohio St.3d 558,560. "Further, the legislation being questioned will not be invalidated unless the challenger establishes that it is unconstitutional beyond a reasonable doubt." Id.
R.C. 2921.34(A)(1) states that
 [n]o person, knowing the person is under detention or being reckless in that regard, shall purposely break or attempt to break the detention, or purposely fail to return to detention, either following temporary leave granted for a specific purpose or limited period, or at the time required when serving a sentence in intermittent confinement.
 The term "detention" includes the "supervision by any employee of the department of rehabilitation and correction of a person on any type of release from a state correctional institution." R.C. 2921.01(E). However, prior to October 4, 1996, parolees were explicitly excluded from the definition of detention in R.C. 2921.01(E). State v. Conyers (1999), 87 Ohio St.3d 246, 248. Former R.C. 2921.01(E) defined "detention" in part as "supervision by an employee of the department of rehabilitation and correction of a person on any type of release from a state correctional institution other than release on parole or shock probation." (Emphasis added.) The General Assembly removed the emphasized phrase on October 4, 1996, thereby including parolees in the class of persons subject to prosecution for escape. Conyers, 87 Ohio St.3d at 248. Furthermore, R.C. 2967.15(C)(2)[1]
provides that "[a] person who is under * * * any form of authorized release under the supervision of the adult parole authority is considered to be in custody while * * * on release, and, if the person absconds from supervision, the person may be prosecuted for the offense of escape."[2]
In the present case, we find that Mr. Adams has not met the burden of proving that R.C. 2921.34(A)(1) is unconstitutional beyond a reasonable doubt. First, Mr. Adams asserts that the application of R.C. 2921.34(A)(1) to him violates the Cruel and Unusual Punishment Clauses of both the United States and Ohio Constitutions. The Eighth Amendment to the United States Constitution and Section 9, Article I of the Ohio Constitution have identical language and provide: "Excessive bail shall not be required[;] nor excessive fines imposed[;] nor cruel and unusual punishments inflicted."
 Historically, [the Cruel and Unusual Punishment Clauses have] been invoked in extremely rare cases, where it has been necessary to protect individuals from inhumane punishment such as torture or other barbarous acts. Over the years, it has also been used to prohibit punishments that were found to be disproportionate to the crimes committed. [The Ohio Supreme Court has] stressed that [Cruel and Unusual Punishment Clause] violations are rare. [The Ohio Supreme Court] stated that "[c]ases in which cruel and unusual punishments have been found are limited to those involving sanctions which under the circumstances would be considered shocking to any reasonable person." Furthermore, "the penalty must be so greatly disproportionate to the offense as to shock the sense of justice of the community."
 (Citations omitted.) State v. Weitbrecht (1999), 86 Ohio St.3d 368, 370-71. In Solem v. Helm (1983), 463 U.S. 277, 290-91, 77 L.Ed.2d 637, 649-50, the United
States Supreme Court set forth the following tripartite test to review sentences under the Eighth Amendment:
 First, we look to the gravity of the offense and the harshness of the penalty. * * * Second, it may be helpful to compare the sentences imposed on other criminals in the same jurisdiction. If more serious crimes are subject to the same penalty, or to less serious penalties, that is some indication that the punishment at issue may be excessive. * * * Third, courts may find it useful to compare the sentences imposed for commission of the same crime in other jurisdictions.
 With these principles in mind, we now turn to the present case. Mr. Adams was convicted of escape, a third degree felony,[3] which carries a sentence of up to five years in prison. See R.C. 2921.34(C)(2)(b); R.C. 2929.14(A)(3). Here, the trial court sentenced Mr. Adams to a term of two years of community control sanctions for his conviction of escape. We cannot say that this penalty, under these circumstances, is so greatly disproportionate to the offense as to shock the sense of justice of the community. "In reaching this decision, we are cognizant of the fact that reviewing courts should grant substantial deference to the broad authority that legislatures possess[.]" Weitbrecht, 86 Ohio St.3d at 373. Accordingly, we hold that in this particular case, R.C. 2921.34(A)(1) does not violate the Eighth Amendment to the United States Constitution or Section 9, Article I of the Ohio Constitution.
Next, Mr. Adams argues that R.C. 2921.34(A)(1) violates Section 1, Article I of the Ohio Constitution in that it unreasonably interferes with Mr. Adams' privacy, property, and liberty interest beyond the necessities of the situation. Section1, Article I of the Ohio Constitution provides: "[a]ll men are, by nature, free and independent, and have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing, and protecting property, and seeking and obtaining happiness and safety."
It is well-settled that the legislature has "the authority to enact laws defining criminal conduct and to prescribe its punishment" pursuant to its police powers. Thompkins,75 Ohio St.3d at 560. "[T]his authority is not unfettered and almost every exercise of the police power will necessarily interfere with the enjoyment of liberty or the acquisition or possession of property, or involve an injury to a person." Id. Nevertheless, an exercise of police power is "valid if it bears a real and substantial relation to the public health, safety, morals or general welfare of the public and if it is not unreasonable or arbitrary." Benjamin v. Columbus (1957), 167 Ohio St. 103, paragraph five of the syllabus. In order for a statute to be reasonable under the second prong of the Benjamin test, "[t]he means adopted must be suitable to the end in view, must be impartial in operation and not unduly oppressive upon individuals, must have a real and substantial relation to their purpose, and must not interfere with private rights beyond the necessities of the situation." Froelich v. Cleveland (1919), 99 Ohio St. 376, paragraph three of the syllabus.
In the case sub judice, we find that R.C. 2921.34(A)(1) does not violate Section 1, Article I of the Ohio Constitution. Clearly, the escape statute serves to promote the general welfare and safety of the public by deterring individuals from attempting to leave lawful detention, thereby protecting law enforcement officials and persons who may encounter the individual while he or she is fleeing detention. Further, we hold that the General Assembly has chosen appropriate means to meet these goals, which means do not unreasonably interfere with the liberty interests of individuals beyond the necessities of the situation and are not unduly oppressive. Accordingly, we conclude that R.C.2921.34(A)(1) constitutes a valid use of the state's police power, and therefore, does not violate Section 1, Article I of the Ohio Constitution.
Lastly, Mr. Adams argues that he should not have been indicted for escape because the matter could have been easily addressed by imposing more restrictive terms of supervision under post-release control. However, the decision of whether to prosecute an individual and what specific charges to file rest within the prosecutor's discretion. United States v. Batchelder
(1979), 442 U.S. 114, 124, 60 L.Ed.2d 755, 765. Therefore, we conclude that it was well within the prosecutor's discretion to indict Mr. Adams for escape.
Mr. Adams' assignment of error is overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
[1] Prior to March 17, 1998, R.C. 2967.15(C)(2) specifically excluded parolees from the escape statute, stating in relevant part that a "furloughee or a releasee other than a person who isreleased on parole * * * is considered to be in custody * * * and * * * may be prosecuted for the offense of escape." (Emphasis added.) See, also, State v. Conyers (1999), 87 Ohio St.3d 246, 249.
[2] Recently, this court upheld a conviction for escape, in which the defendant had been released from prison on post-release control and subsequently failed to report to his parole officer. See State v. Jeter (Sept. 13, 2000), Lorain App. No. 99CA007505, unreported.
[3] Mr. Adams' conviction for escape was a felony of the third degree because "the most serious offense for which [Mr. Adams] was under detention * * * [was] a felony of the third, fourth, or fifth degree[.]" R.C. 2921.34(C)(2)(b). Whether escape is a felony of the second degree, third degree, fifth degree, or a misdemeanor of the first degree depends primarily on what the most serious offense for which the person was under detention. See R.C.2921.34(C). For instance, a conviction for escape can be "[a] misdemeanor of the first degree, when the most serious offense for which the person was under detention is a misdemeanor and when the person fails to return to detention at a specified time following temporary leave granted for a specific purpose or limited period or at the time required when serving a sentence in intermittent confinement." R.C. 2921.34(C)(2)(d).